to 23-8088 United States of America v. Sterkaj. Ms. Kunstler, let's just give everybody a minute to clear out, so we can hear you. Thank you. And you have reserved two minutes for rebuttal. Yes. You may proceed when you're ready. Good morning, Your Honors. May it please the Court, my name is Sarah Kunstler and I'm the attorney for Mr. Sterkaj. Your Honors, this is a case that presents a number of extraordinary circumstances. The guidelines in this case recommended a sentence of zero to six months. The government did not object to a sentence in that range. Nonetheless, the district court sentenced my client to 24 months of imprisonment, an upward variance four times the top of the range. The government concedes that the record in this case is sufficiently clear to establish that the district court increased Sterkaj's sentence for his failure to cooperate. In doing so, the district court clearly violated binding precedent under United States v. Stratton and its progeny. Your Honors, while the government has asked this court to revisit Stratton, there is no basis to do this. First, this precedent remains binding, absent a Supreme Court ruling or en banc consideration by this court. Can I ask you what you think the source of law is that Stratton grounds its holding? Well, I think the source of law here is that I think that there are really, essentially there are good policy reasons that support Stratton at its base, right? A court may enjoy wide discretion at sentencing. The government has cited case law that says this. There's statutory law that says this. But this is not about the scope of that discretion. This is about information that a district court, this is not about information the district court has. This is about information that it does not have and cannot properly assess because it doesn't stand in the shoes of the parties and it's removed from the calculus of those decisions. Mr. President, we can't say that cooperation is an irrelevant factor at sentencing because under the guidelines and under precedent, providing cooperation can be a mitigating factor. So I think what might help us is to hear why you think it cannot be an aggravating factor. And if I could just add something to that. In this case, I gather there's even a question as to whether your client refused to cooperate or whether cooperation was not sought by the government. Am I right about that? Yes. So help me out with my area of inquiry. Yes, well, I mean, when this court ruled in Stratton and when it ruled earlier in Millett, what it spoke to was integrity concerns, right? That penalizing a defendant, even if he hasn't invoked his Fifth Amendment right here, degrades the integrity of the court. And the reason that it does so is because it's invading an area where the court is lacking in information, right? The court is not involved in negotiations that lead to whether or not it's a plea agreement or a cooperation agreement. I mean, this court seemed like it was, doesn't it? Well, I mean, here, you're correct. It can as a matter of law, but it's hard to read this transcript. Is the district court doing anything other than involving itself in plea negotiations? And for that reason, the integrity concerns in this case are greater than they were in Stratton, because here the court didn't just increase the sentence on its perception of Mr. Sterkaj's failure to cooperate. It attempted to exert pressure on Mr. Sterkaj to cooperate, adjourning the sentence twice, so that Mr. Sterkaj could think about what exactly would happen to him, the consequences he would face if he did not do what the court wanted him to do. And this is, Your Honors, why we have Rule 11, right? Rule 11 expressly prohibits judges from involving themselves in the plea bargaining process, right? That is a concern at issue here. That is why the court, one of the reasons why the court cannot do what it did here, because when a judge involves himself, as it did here, the judge is no longer acting as a judicial officer or a neutral arbiter, right? The judge is becoming or seems to become an advocate for the resolution that he has suggested to the defendant. So is that the law violation here? I mean, it goes a little bit back to my question about what is the authority for which Stratton derives its holding. But is the law violation here, the district court involving itself in plea negotiations and attempting to coerce cooperation, is that a due process violation, is it a Fifth Amendment violation, is it a Federal Rules of Criminal Procedure violation? I think it's a number of violations. I do think it is a Rule 11 violation. I do think it is also a due process violation in that the judge is making this decision based on material assumptions that are materially false, right? This is not a case in which, you know, the court says to the government, we didn't seek his cooperation. Sorry, the government says to the court, we didn't seek his cooperation. After the court exerts pressure, what happens is the government says, we met with him, he spoke to us, he was honest with us, we accept what he has to say, we are seeking nothing further from him. And yet, despite the fact that Mr. Sterkoj and the government did what the court asked them to do, the court still finds that Mr. Sterkoj is exhibiting a lack of remorse on the basis of his failure to cooperate. That is based here on a materially false assumption. Nowhere are facts in the record before this court to support the judgment that the court makes. That's not a Stratton problem, right? I mean, under Stratton, it shouldn't matter right or wrong if the judge concludes that there's a failure to cooperate. Do I have that wrong? No, but that is an additional problem here. And it does speak to an integrity issue that I think Stratton underscores, which is part of the reason we don't want judges enhancing sentences on this basis is because they don't have information to make those decisions, right? The reason that there's this distinction that this court made in Stratton between denying a defendant leniency and enhancing his punishment based on a failure to cooperate is that when a court denies leniency, when a defendant asserts, I cooperated and the government didn't give me the benefit of that. In front of the court, the parties put before the court facts, right? They put about, this is what we expected of the defendant. This is what the defendant did or didn't do. This is why what I did qualifies as cooperation. A defendant has made a choice to speak, to give those statements, to provide that information. Here, we have a case where a defendant has not made that decision. Well, but we have to consider, again, looking at the statutes. 18 U.S.C. 3661 says no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense, which a court may receive and consider for the purpose of imposing an appropriate sentence. Now, that has been limited to cannot consider invidious factors. I would assume you would argue that it cannot consider an invocation of the Fifth Amendment. But short of that, Section 3661 seems to give district courts a lot of leeway to consider factors. And I'm not sure I understood your argument a moment ago, but do you think that failure to cooperate, especially in the circumstances of this case, where no one has suggested your client conducted this crime by himself rather than at the behest of someone else, but wouldn't identify that someone else, that that's irrelevant to whether or not he's remorseful and whether or not he might still be capable of committing this crime again? It's hard for me to conclude it's irrelevant or that it's not properly considered under 3661. Well, we have acceptance of responsibility points, right, that come into play when a defendant decides to plead guilty. Those are guidelines. They're recommendations. And courts have often thought that one size doesn't fit all on those circumstances. So when I used to represent clients before the district court, I would have clients' situations where my client would want to cooperate or the government would want to cooperate, but there would be concerns that reasons that he or she could not, right, a great risk to that person's family, you know, getting that person's grandfather in trouble, you know, a great risk to that person, a life or death situation that prevented. I would say to the government, my client would love to do this, but he can't, and he can't because there are all these intended concerns. Those are, you know, sometimes I would get into them, sometimes I wouldn't, but that is part of a discussion that happens between parties. That is not something that spills over in front of a court, right? And there's good reasons that that doesn't spill over in front of a court, right? But here we have certain things that we ask a defendant to do. We have expectations we set out for how a client, what a client needs to do to plead guilty, how acceptance of responsibility is calculated, right? So I've not, I understand that a court's discretion is not limited, but these are factors that a court doesn't get to hear. So because the court doesn't get to hear this information, the calculus that goes into, when a client pleads guilty, you know, often the investigation the government does, right? The discussions between the parties, security and safety concerns. These are all things that the court doesn't get to hear. So it's not that we're cabining a district court's discretion to consider information that's in front of it. The distinction that this court found in Millett is because this is information that is not in front of the district court. This relates to issues and concerns, risks and calculus that the district court doesn't have in front of it. So when the district court rules on a defendant's failure to cooperate, it is ruling on something based on facts that it does not have. I'm hoping that that answers that question. Can we agree that there seems to be some tension here between the Stratton case, our Stratton case, and Concepcion versus U.S. and the statute to which Judge Raji referred? What do we do with the fact that Concepcion appears to require us to effectively elide, overrule, go beyond U.S. against Stratton? Well, I think in large part I tried to answer that in my answer to the last question. Some of us are a little slow on the uptake, and we go back to ask the question again. You know, which is that I'm not disputing the wide discretion of the district courts. I don't think- What I'm asking really is whether we, as a court of appeals, have the right to effectively ignore the teaching of Concepcion against the United States. Well, I mean, I don't think that this court has to ignore Concepcion in order to see the wisdom of Stratton. And I don't think that Concepcion overrules Stratton. It's not directly related to Stratton. So even if this court were to want to revisit Stratton in light of Concepcion, it would require an en banc panel of this court to do so. But that- How about simply relying on the Supreme Court decision? Why would we have to have an en banc- Because I don't think Concepcion speaks to the issue here. But even assuming- I would say that there are essentially no limitations, but it does identify the one limitation, which is that are those set forth by Congress in statute or by the Constitution? And so you see why then my question to you as to what is the source of law for Stratton is relevant to that question, right? Because if Stratton as a matter of due process or the Fifth Amendment or statutory law or federal as a civil procedure, if that is the source of authority for the holding in Stratton, then it's perfectly consistent and the chain is unbroken in light of that line of Concepcion, right? Yes. And I do think that Rule 11 is a source of law here. I do think due process is a source of law here. When we look at- And I do think that there are- That when you look at this case, again, this is a case where a judge is making a decision based on information that it does not have, right? And I think that takes it outside of Concepcion because it's not about a matter that is presented to it. The court can't make findings of fact here based about my client's remorse. There's no basis to make a finding of fact on my client's remorse based on how he conducted himself in this case, right? And I think that this case presents- Or what the judge did here creates a real problem for the integrity of our criminal justice proceedings and how the set of expectations the criminal defendants bring to cases where they decide to plead guilty or when they decide to cooperate. How is a defendant- For doing something he is not required to do, for meting out additional punishment when he's not committed an additional offense. If we- I want to be sure I understand your Rule 11 argument. I mean, there was no question about accepting the plea or- What do you think in Rule 11 is violated here, just so that I'm clear on your argument? Yes. You know, I think it's Rule 11C1, which is about judicial involvement in the plea process, right? When a judge inserts himself in this and says, I'm penalizing you for not cooperating- Right, but what the judge can involve him or herself in is the discussions about whether a defendant may discuss and reach a plea agreement. There was no agreement on sentencing here or on the plea, and I'm not sure that the judge's involvement didn't come after the fact. So I'm not sure Rule 11 is going to be where we would look, but help me out if I'm missing something. Well, I mean, I think on the facts of this case, Rule 11 does come into play because here we have a pre-sentenced defendant and the judge is saying, go back, go back, parties, and essentially forcing a proffer on parties who have already resolved the case differently. And what the purpose of Rule 11 here is, in terms of judicial involvement in pleas, is about preventing judges from creating implicit or explicit pressure to settle cases on terms that the court favors. And this court ruled that in United States v. Paul, which is- But in a larger- Even at the sentencing, isn't the judge still sort of saying, looking to the future, like perhaps impliedly suggesting a sentencing modification just like in Stratton, which is if you cooperate, like the tense, I don't have it in front of me, but the grammatical tense the judge is using is still about think about what you're doing. I think that's true. And if you look at the cases, if you look at Stratton and the cases that follow it, too, the court in those cases is doing something similar, right? It may be post-plea, but in those, the judge is saying, well, if you had done this, I would have done this, right? So it's almost forcing the parties or exerting pressure on the parties to go back to that moment or to consider a Rule 35 posture. I did this, defendant, because you wouldn't do this, right? So if only you had done this, this would have been the result. So it is, even though it is at a different point in the case, it speaks to the concerns of Rule 11, takes us back to the place, the reasons why that portion of Rule 11 was set up, because a judge, when they involve themselves in that process, at any point, even that point, is no longer a judicial officer or a neutral arbiter, right? That judge has become or seems to become an advocate for the resolution that he or she has suggested. And that's what, you know, when this court talks about that part of Rule 11, that is the calculus of the consideration that this court is using. Well, I mean, does that whole, can we really say that? I mean, if the defendant cooperates, but not fully and completely, and the judge says, well, I'll give you some consideration, but it wasn't full and complete cooperation, so I'm not going to give you as much as I otherwise would have, I gather you have no problem with that? I mean, that is a different situation because that is more of the other situation in, you know, the Roberts footnote, right, and that this court considered in Millett, right? That it's about whether or not there is a distinction between denying a defendant leniency and enhancing his punishment. And that is what this court has said. That is the distinction that this court has made. And the reason for that is because in a situation where a court denies leniency or gives less leniency than a defendant might be seeking, that is a situation in which the parties have decided what's going to happen in that case, right? The parties have decided without the intervention of the judge that a person is going to cooperate, right? And the judge is at the end of it judging as the judge must how to weigh what the parties have done. Well, it seems to me implicit in this record is a suggestion that Judge Scullin thought the guidelines were quite low for this kind of crime. And if there was no cooperation, he was sentencing to two years. And perhaps if he had put it that way, you wouldn't have had an argument. Am I wrong? If the judge had said the guidelines were quite low. But if you were to cooperate, I'd consider something. If the judge had said that he didn't think the guidelines were sufficient for the seriousness of the crime, that would be something else. That would be an additional factor. We wouldn't have the government conceding. It's a stratum violation, I believe, in that case. Okay. Thank you. Thank you, Your Honor. You do have two minutes for a vote. That's counsel for Mr. Sterkosz. I'm sorry, for the government.  May it please the court. There was, in the opening brief here, there was no mention of Rule 11, a Rule 11 violation. That issue was just not briefed. So that was the first point I would make. We seem to have gone off on a completely different tangent here. The argument that the government is making is that under Supreme Court precedent, the District Court did not violate the defendant's Fifth Amendment right or commit procedural error because it was an unexplained refusal to provide a full account of the defendant's criminal conduct. The defendant never invoked his Fifth Amendment right. He also never told the government that he feared reprisal. In short, the District Court did not punish a constitutional right here because that right was never asserted. And as we point out, in Concepcion, it's clear that the two sources of limitation on what a court can consider are the Constitution, which is really not implicated here, or statutory law. So, Mr. DeSantis, I understand the government concedes if Stratton is still good law, it's a vacater of man. So what do you understand to be the source of law on which Stratton's holding is predicated? Your Honor, frankly, it's entirely unclear to me. It has to be something, right? I think it's basically a procedural rule. I think this is the kind of situation that Concepcion was talking about, where you have a circuit court imposing certain limitations on what a judge can consider, and those are sort of procedural, like, decisional law. And it's unclear to me where that's coming from in Stratton. I think it's also, as we point out, it's not consistent with Roberts. You're saying Stratton is not consistent with Roberts? Right. That ship sailed, didn't it? Oh, it has. Just given the march of time, Roberts is decided, and then Stratton. But in talking about what the source of law is here, I think it kind of goes to this, that it kind of develops out of whole cloth. And that's precisely what Concepcion says. I mean, we can't say that Stratton is inconsistent with Roberts, therefore we will disregard it. No, and we recognize that. But I think what you can do is look at subsequent developments in the Supreme Court, including the Salinas case, which goes to the Fifth Amendment issue, which is how I interpreted the opening brief here, which was that it was a Fifth Amendment violation. Yeah, I mean, Stratton says the defendant raises Fifth Amendment on appeal, but it doesn't matter that he didn't raise it below because we've held that you can't punish more for failure to cooperate, whatever the reason is. Fear of reprisal. Right. It seems to say, or at least I think a plausible reading of Stratton, tell me if you disagree, is whatever the reason doesn't matter, punishment can't be enhanced based on the failure to cooperate. Right. But in terms of where that rule comes from, it seems somewhat mysterious. But it can't be the Fifth Amendment if it applies to things other than the invocation of the Fifth Amendment. Right. And also, I think in Salinas, we're out of Fifth Amendment world because there was no invocation. I think that gets us out of also the Mitchell case, which unfortunately I didn't cite in the brief. But that case concerned an invocation and whether you could draw adverse factual inferences about the crime. May I ask you a practical question? I mean, if we were to accept your argument, is the practical consequence going to be that every defense attorney will simply tell his client to invoke the Fifth Amendment when he or she doesn't want to cooperate? I think that's probably likely what would be the incentive that defendants would have. I know it's not a great result, but I think that's at least according to this court's law. And I think it's still an open question in the Supreme Court whether even invoking your Fifth Amendment right means that a judge can't consider that as an adverse factor in sentencing. How would we do that? No, I'm sorry. The Supreme Court hasn't decided that. This court has clearly held that you can't do that. And we acknowledge that. May I ask another practical question? One can read this record to suggest that Judge Scullin's frustration was primarily with the government and its distinct lack of curiosity about the circumstances of this crime. Do you want to shed any light on that for us? I mean, it may not be relevant to our decision today, but is there anything we should know? I mean, this is at a period of time when, and it's somewhat settled down, but there's a lot of activity on the northern border. There are a lot of people coming across. We had a lot of cases. I'm sorry. I can't quite hear. Oh, sorry. You can raise the podium. Why don't you raise it? So this was at a period of time of marked increase in the number of border crossings in the northern district. Frankly, our resources were not prepared for this. We don't have the resources of U.S. attorney's offices in the southern border, but we had to triage these cases. And Mr. Sturkage fell in with our prosecutorial guidance a case where we're not going to seek to go after him on a bringing in charge, which has a mandatory minimum. This was just not the type of case and not the type of defendant that we would have sought that. So as a matter of course with these folks who pick up others coming across the border illegally or transporting them, you don't ask the question who hired you? Well, I think it's more that- Because that seems to be what Judge Scullin was after. Am I right? Right. I wanted to get to that point because I think his- In terms of his interference here with the process, I think it was more he was trying to get a more precise explanation of what this defendant was not willing to give up. I'm not sure he was trying to get us to- Well, as I understood the development and why I suggested that the frustration was more with the government is that- Am I right that it evolved where court asked the question and the government said we haven't asked him for cooperation? Well, so it was- Well, it was more that, yeah, we didn't enter into a cooperation agreement with him. We decided this is not a case where we believed it would be fruitful. So let me ask you, is this a case in which we have to decide how far we're prepared to stand or not stand by Stratton? I mean, this is a case where he's penalized for not cooperating where the government didn't ask for his cooperation? Well, he was being penalized- The government did have discussions through the attorney and did pose those questions through the attorney, and the attorney said he's not willing to answer that. That was after Judge Scullin asked for- Right. That was in one of the sentencing- after one of the sentencing hearings and one of the meetings with the judge. So it wasn't- it was- the government didn't enter into a formal cooperation agreement. We did pose those questions, and that's what Judge Scullin wanted to know. What is his reaction to that? And he got that information eventually. But it was a tricky situation because we had entered into a plea agreement already with his defendant without a cooperation agreement. And I think our office was concerned that we would then be in a position of going back on that. You would potentially be in breach if you were effectively requiring cooperation at that point on your own. Right. Right. Right. And so we conducted an attorney proffer just to get his- to clarify the issue that Judge Scullin wanted to know, which is he willing to provide this information or not? And the answer was no, and that's where we left it, and that's what the judge wanted to know. He didn't- and so in terms of where we are, again, I think you have Salinas, which I think knocks out the Fifth Amendment issue. You have Pepper, and you have Concepcion especially, which really, I think, provide a reason not to- if Stratton is interpreted as kind of a procedural rule that's created by a circuit to prevent judges from considering certain factors, that, I think, is just inconsistent with new intervening Supreme Court law. And so that's, I think, where we are in this case. And for that reason, we would suggest that the sentence should be affirmed. And if the court is not willing to go down that path, as we've acknowledged, it would be a Stratton violation here and would require a remand for resentencing. And if you acknowledge a violation of Stratton, we would remand to Judge Scullin? Your Honor, we think that would be appropriate. We think that he has- there's no indication that he couldn't, with instruction from this court, that you can't consider this certain factor as an aggravating factor. I don't think there's any reason to think that he would not abide by that. And as we point out in the brief, there have been other developments since that time that the court under Pepper could consider upon resentencing. Could I just add briefly on the preservation and lack of invocation? There is the moment after the sentence in which defense counsel says we do object and sort of says for above guidelines. And then I think Judge Scullin essentially intervenes and says you don't need to preserve the objection. It's hard to tell if that sometimes judges sort of cut off providing reasons or it could have just been you don't need to preserve an objection to an above guideline sentence. I find it a little hard to tell in the cold record. Do you have a sense? I would lean towards the latter interpretation. I think it was more, again, I think more of a procedural kind of direction from the court that obviously if I go above the guidelines, there's no need to keep objecting to that. But there's really no hint of an invocation in any of the proceedings in front of Judge Scullin or nothing. The attorney that was representing Mr. Sturkaj never suggested that in any way at any point. So it does seem like we are just outside of the Fifth Amendment lane here. And we are in this procedural world where Concepcion, again, I think, knocks these kind of decisional rules out. It has to come from the statutes. It has to come from the Constitution. And if you don't have that under 3661, you have discretion to consider the failure to provide a full account as an aggravating factor. Thank you, Mr. President. Thank you. Counselor, you have two minutes. Thank you. Sitting here, I'm thinking about one of the questions that we're mulling over here today, which is where do we locate Stratton? What's the authority that Stratton's based on? What is integrity? What does judicial integrity mean in the Stratton context? And, you know, I think, you know, while he did not invoke his Fifth Amendment rights, and we're not, and due process is nonetheless still a concern here. Because, you know, this is a, the role of a court is to safeguard a defendant's rights, is to protect a constitutional rights. When the court asks a defendant to give up those rights, or when a court permits a defendant to plead guilty, right, is satisfied that a client understands the rights that he or she is giving up, it is acting in its role as that safeguard of those rights. And here we have a judge who is pressing a client to bear witness against himself. Not necessarily. Not necessarily. I mean, the judge's concern was who else he was involved in this with. Now, there could be circumstances where answering that question inculcate the declarant further, but there could be circumstances where it does not. And so I'm not sure we immediately assume this is a Fifth Amendment intrusion. Well, it's, the judge didn't say here, I'm giving you an additional sentence because I'm concerned, as the government mentioned, on the scourge at the border, and that there's more people coming in and the dangerousness of this. I'm giving you an additional sentence because I want to punish the people who involved you in this. So the judge said, I'm giving you an additional sentence because you didn't cooperate. A judge's role is to explain to a defendant, before that defendant says what it is that he or she did to make them guilty, to make sure that that defendant understands what a grave thing it is to speak at that moment, to give up those sacred rights. Here, we have a judge saying, this is the result I want. And if I don't get the result I want, then I am pressuring you to give up these rights. I'm not explaining them to you. I'm not acting in my role as judge here. I'm acting outside that role. And this court has to safeguard a defendant. If that judge would not stand up for this defendant, if that judge would not safeguard this defendant's rights in that courtroom, then this court has to. This court has to set the limits of what goes on in district courts across this state. And what happened here should not have happened. District courts should not be doing this. And this court cannot countenance them doing so. And the fact here, the government spoke also about whether or not it was seeking his cooperation, to the extent that that matters, because it's not an area that judges get into at this moment in sentencing. This judge did, but this is not the norm. But what I will say to that is, here we have a situation where the government stood up and said, we were satisfied with Mr. Sterkodjic's candor during the proper. We are not seeking anything further from him. And on that basis, despite that, despite the facts here, so even outside of Stratton, right, the reasons the court gave for its sentence here don't hold water. You know, I submit Stratton remains good law. I don't think this court should overrule it. I think Stratton, like this court, stands as a safeguard for defendants in precisely this situation. But even Stratton aside, when you look at the information the court had, the court did not have the factual basis to reach the conclusion it reached here. This is not a case where a defendant failed to cooperate, right? This is not, it's just not that case. There is no basis. This court was pulling out of thin air this idea that my client had failed to cooperate and in doing so had failed to show remorse. And that is also why reassignment to a different district court is necessary here, right? Because given what this court said and the conclusion it's reached, reassignment is necessary to preserve the appearance of justice here, right? And that is why under similar circumstances in DiGiovanni versus the United States and Stratton versus the United States, the court remanded to a different court. And I would submit it's even more important here because here we have a court looking at a record and making materially false statements based on that record, reaching conclusions that it had no basis to reach. And when that happens- What do you think is the materially false statement made by Judge Stratton? Well, I say that there was a basis to conclude that my client had failed to show remorse, right? That the court had information in front of it sufficient to establish a lack of remorse based on his perception of his failure to cooperate. The unexplained failure to cooperate. That's what he was relying on. I mean, you just labeled that a materially false statement. I understand why you might disagree with it, but it's a serious matter to accuse someone of material falsehood. This is not a situation. A finding of unexplained cooperation is a false finding, right? This is not a situation where he didn't cooperate and it's unexplained. It's a case where by the time it got to sentencing before this court, the parties had- the government had not asked for his cooperation, had not sought his cooperation, and had extended him a plea agreement, which he had taken, right? The only conversation about cooperation happened when the court here forced the issue. And after that happened, the government was satisfied with what he gave. The probation and the government agreed that he deserved three points for acceptance of responsibility, which is not what happens typically in a situation where a defendant is lacking in remorse. Mr. Sirkaj expressed remorse as part of his- in his sentencing submission, right? So the court wasn't- the court didn't say, you know, I'm not buying your remorse. He said there was a lack of remorse. There was no evidence here of a lack of remorse. The guidelines were zero to six months. The government advocated for a zero-month sentence, right? This was- this is the factual record that is before this court. And on this factual record, the finding that the district court made just doesn't hold water. Can I ask on that? Because, I mean, that seems a little bit of a non-straten argument. That is a non-straten argument. So if it's a non-straten argument, are you saying it could go back to the district court for, like, cooperation or not cooperation? I mean, what's the remedy if this was, like, a finding of lack of remorse not predicated in the record? Well, I think this court can reverse on the basis of straten. And- but if this court- I think there's also an independent basis to reverse this case in that- It would be strange, wouldn't it, to say, well, we don't need to decide whether straten is good law or not, but because the record here is insufficient to determine whether he really cooperated to some extent and whether what he didn't cooperate on reflected a lack of remorse. So we'll send it back, presumably, for resentencing in which that can be done, potentially in violation of straten. That doesn't- Yeah, no, no, I'm giving- I'm saying your court has another reason. Should your court- you know, if for some reason this court decides that straten is not good law, which I urge this court not to do, that this court has an independent basis. But I do don't- I also don't think a fatical hearing would be necessary. I think there is a developed factual record here. It just doesn't support the findings the court made. Thank you. Thank you. All right, thank you to both counsel for your very helpful arguments. The matter is submitted and taken under advisement.